IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARRY BLOCH, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 15-5806 |
| MACK TRUCKS, INC., | |
| Defendant. | |

**MEMORANDUM OPINION**

Schmehl, J.   /s/ JLS                                                                                                March 7, 2017

## I.     INTRODUCTION

Plaintiff, Barry Bloch ("Plaintiff" or "Bloch"), brings this suit against his former employer, Mack Trucks, Inc. ("Defendant" or "Mack"), under the Age Discrimination in Employment Act ("ADEA"), 29 U.S. C. §§ 621, *et seq*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*., alleging that Defendant terminated his employment because of his age. Before the Court is the Motion for Summary Judgment of Defendant, Plaintiff's response in opposition to the motion, and Defendant's reply. For the following reasons, Defendant's motion is granted.

## II.    LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. Proc. 56(c).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (*citing* Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### III.    FACTUAL BACKGROUND

Plaintiff began working for Defendant on January 24, 1977. (ECF 14, Ex. A, referred to as Bloch Dep. at 16.) Starting in the early 1980's, he worked in the maintenance department at Defendant's Macungie plant, including over ten years as a maintenance mechanic. (Bloch Dep. at 21-23, 25.) Plaintiff's employment was terminated on January 13, 2014, when he was 57 years old. (Bloch Dep. at 7, 25.) At the time of his termination, Plaintiff worked second shift, regularly scheduled from 2:30 p.m. to 10:30 p.m. (Bloch Dep. at 29.)

Bloch's duties included repairing trucks needing maintenance, as well as coordinating the removal of bulk scrap metal from Defendant's facility approximately

three or four times a year with C. Lick, Jr. Salvage, Inc. as the removal service. (Bloch Dep. at 25, 39, 49-50.) When scrap metal needed to be removed, a supervisor would contact Bloch and request his help. (Bloch Dep. at 39-40.) Plaintiff would assess the scrap to determine how many trucks would be needed to haul it, then contact C. Lick's owner, Clifford Lick, to discuss the price and coordinate for the scrap to be picked up. (Bloch Dep. at 50-52.) Bloch would also talk to Al Fox, who would generate an Authorization to Ship ("ATS") form, which was required to document scrap metal removal at Mack. (Bloch Dep. at 48, 52; Gombos Dep. at 11; ECF 14, Ex. I.) At the time of the removal, Bloch would generally provide the ATS to the C. Lick driver and help load the scrap onto the trucks. (Bloch Dep. at 52.) Plaintiff testified that on occasion, C. Lick would be provided with the ATS after the pick-up was completed. (Bloch Dep. at 52-53.) In support of this contention, Plaintiff supplied a statement from a former supervisor, William Laudenslager, who claimed that occasionally, he was verbally advised to clean up scrap metal and the paperwork for these clean-ups was provided after the fact. (Bloch Dep. at 173-174, ECF 14, Ex. K.) It is undisputed, however, that Bloch had requested an ATS for scrap metal pick-up that occurred on November 8, 2013 and November 18, 2013. (Bloch Dep. at 83-86; ECF 14, Ex. I.) After C. Lick picked up the scrap, they would weigh the scrap at their own facility, and then issue Mack a check. (Bloch Dep. at 54; Gombos Dep. at 9-10.)

During the week of November 4, 2013, Plaintiff was advised by Dave Sodl, PM Coordinator, that certain scrap metal needed to be removed for an upcoming visit from Defendant's CEO. (Complaint, ¶ 10.) Plaintiff coordinated the removal of scrap metal by C. Lick on Friday, November 8, 2013, and had the ATS generated by Mr. Fox. (Bloch

3

Dep. at 77, 84-85.) Bloch claims that it rained that day, so they could not finish the removal and C. Lick trucks were required to return on Sunday. (Bloch Dep. at 77.)

Plaintiff states that he appeared for work on Sunday, November 10, 2013 at 10:30 a.m., four hours prior to the start of his scheduled overtime shift, which he had been canvassed to work earlier that week by his supervisor. (Bloch Dep. at 62-69.) Bloch did not have permission to appear to work this early before his scheduled shift. (Bloch Dep. at 69, 71.)

Upon being questioned by other employees as to why Bloch was permitted to work early start overtime that day, and they were not, Steve Furman, the supervisor on duty that day found Plaintiff loading scrap metal onto C. Lick trucks. (Gombos Dep. at 11-12; Filipowicz Dep. at 8, 13.) Furman was surprised to find Bloch loading scrap metal, since scrap metal removal usually did not occur on the weekends and no one had told him that it was going to be taking place on that day. (Furman Dep. at 16, 14, 25.) Furman did not stop Bloch from removing the scrap metal because Bloch told him that he had been instructed to remove the scrap. (Furman Dep. at 16, 25, 18.) Furman confirmed that he saw the name "C. Lick" on the side of the trucks. (Furman Dep. at 12.) Bloch contends that he and Furman discussed that Bloch had some but not all of the paperwork necessary for the removal, and that Furman told him to remove the scrap anyway. (Bloch Dep. at 86-87.) However, Furman testified that he had asked Bloch what he was doing when he saw him loading the C. Lick truck and that Bloch told him "he was told to clean up the area." (Furman Dep. at 24-25.) At some point, Furman went to talk to Talat Butt, the security guard on duty, in the guard shack about the removal of the scrap metal, because removal on a Sunday was "very, very unusual." (Furman Dep. at 20.) Butt told

4

him that these trucks would be coming in and out, and that he had a conversation with Bloch, and that Bloch knew the trucks would be present. (Furman Dep. at 20-21.) Furman testified that Butt did not tell him that anyone had told Butt that he should not log the trucks in and out. (Furman Dep. at 21-22.) However, Butt's written statement states that a Mack employee instructed him not to log the trucks in and out. (ECF 14, Ex. W.)

Bloch claims that one ATS form for the November 10, 2013, scrap removal had been generated and only the second load on that day lacked the proper paperwork. (Bloch Dep. at 86-87.) This conflicts with the information that Bloch gave Filipowicz, Defendant's Manager of Labor Relations, during Mack's investigation of the scrap removal, where he admitted several times that no ATS forms had been created for the November 10, 2013 scrap removal. (ECF 14, Exs. O and P.) This statement is in further conflict with the statement that Al Fox, the only person at Mack who could generate an ATS form, gave to Filipowicz during Mack's investigation, as Fox stated that no ATS forms were generated for November 10, 2013. (ECF 14, Ex. J.) Bloch also claims that he called two other supervisors on November 10, 2013, to let them know that the scrap metal had been removed, but both supervisors deny ever speaking to or hearing from Bloch that weekend, (Sodl Dep. at 17, Gombos Dep. at 15) and both advised Filipowicz during his investigation that they had no knowledge of scrap metal removal that weekend and had not authorized it. (ECF 14, Exs. S and T.) Further, Furman testified that when he asked Bloch for the paperwork related to the removal, Bloch told him that "it was being handled." (Furman Dep. at 26.)

Sometime later, Furman spoke with Sodl, Fox and Gombos, Manager of Facilities, to determine if anyone had given Plaintiff permission to remove scrap metal

that weekend, and all three told him that they were unaware that scrap metal removal had occurred. (Furman Dep. at 22-23.) Filipowicz then began an investigation to determine why scrap metal had been removed without the necessary prior authorization and how Plaintiff ended up working outside of his scheduled shift that day. (Filipowicz Dep. at 8-9, 19.)

Filipowicz spoke with Gombos, Sodl, Ty Behler and Fox during the course of his investigation. Gombos, Sodl and Behler all stated that Plaintiff had not been canvassed for early start overtime on November 10, 2013, and had not been given permission to work outside of his normal shift. (ECF 14, Exs. S, T, and V.) They also stated that they had not been informed of or given Plaintiff authorization for scrap metal removal on November 10, 2013. (ECF 14, Exs. S and T.) Fox informed Filipowicz that he had created ATS forms for November 8 and 18, 2013, but that no one had asked him for, nor had he created, an ATS form for November 10, 2013. (ECF 14, Exs. J and I.)

Filipowicz also spoke with the security guard on duty that day, Talat Butt. (Filipowicz Dep. at 27-28, 40.) Mr. Butt informed him that a maintenance employee approached him on November 10, 2013 and told him that there would be scrap metal trucks coming into the facility that day and Butt should not log them on the traffic log. (Filipowicz Dep. at 28-30; ECF 14, Ex. W.) Butt also prepared a written statement to that affect, but never identified Bloch by name. (ECF 14, Ex. W.) A review of the Mack traffic logs for that day does not show the entry of C. Lick trucks, although it is undisputed that C. Lick trucks removed scrap metal from the facility on November 10, 2013. (ECF 14, Exs. X and Y, Bloch Dep. at 114-116.) Filipowicz also reviewed video footage from security cameras at the main gate, which showed a Mack employee riding a

6

green tractor to the office, and the guard leaving his desk to speak to this employee. (ECF 14, Ex. G.) Filipowicz did not at any time interview Furman. (Furman Dep. at 29-30.)

On December 17, 2013, Filipowicz met with Plaintiff and his union representative to discuss the events of November 10, 2013. (Filipowicz Dep. at 8; Bloch Dep. at 105-106.) When questioned, Bloch first stated that he came into work early on November 10, 2013, to fix a broken cylinder head and that it had taken him all day to do so. (ECF 14, Ex. O.) He admitted that he had not been canvassed for early start overtime, but stated that "he didn't think anyone cared" and that he "confused easily." (Id.) He initially claimed to have worked on the broken cylinder from 10:30 a.m. to 3:30 or 4:30 p.m. and that he didn't work on anything else that day. (Id.) After Filiopwicz specifically asked him if he had done so, Bloch admitted to loading scrap metal that day, claiming that this occurred around 4:00 p.m. (Id.) Plaintiff said that he thought the removal had been completed on Friday and didn't know the C. Lick trucks would be coming on Sunday until he was informed by a security guard of their arrival. (Id.) He denied driving to the security office or speaking with the guard, until Filipowicz told him that they had him on camera doing so, to which he replied, "Then I guess I did do that." (Id.) Bloch claimed that he did not tell Butt not to log the trucks, but when asked why he went to speak to the guard or why the trucks were not on the Mack log for that day, he only answered "I don't know. I'm confused." (Id.) Bloch admitted that he knew he was required to obtain an ATS form prior to scrap removal and that he had not given C. Lick an ATS form on November 10, 2013. (Id.) On December 20, 2013, Mack received a check from C. Lick to pay for the scrap that was removed on November 10, 2013. (ECF 14, Ex. L.)

7

Filipowicz stated that he did not find Plaintiff to be credible and he was concerned about his conflicting statements during his interview, and how those statements were inconsistent with the other evidence that he had discovered in the course of his investigation. (ECF 14, Ex. G at ¶ 23.) Filipowicz found Mr. Butt to be credible and was also concerned about Plaintiff apparently telling Mr. Butt not to log in the C. Lick vehicles. (Filipowicz Dep. at 39-40.) Bloch had admitted to Filipowicz that he had arrived for work early and without permission and that he had removed Mack property without the proper authorization. (ECF 14, Ex. O, Ex. G at ¶ 24.) Filipowicz concluded that Bloch had engaged in authorized removal of scrap metal from company property in violation of Mack's Rules of Conduct and had not been honest in their investigation, warranting termination of employment. (ECF 14, Ex. G at ¶ 26.)

On January 13, 2014, Filipowicz again met with Bloch and his union representative about claims that he was being harassed about parking in a management parking lot and to allow Bloch an additional opportunity to explain the events of November 10, 2013. (Bloch Dep. at 55-57; ECF 14, Ex. P.) During this meeting, Bloch now claimed that he had gone to the front gate to notify security that C. Lick trucks were coming, and claimed that he did not recall telling Filipowicz in their first meeting that he only became aware of the trucks' arrival when security called him. (ECF 14, Ex. P.) When asked who had authorized the removal of the scrap on November 10, 2013, why no ATS form had been created, and why he failed to notify any members of management about the scrap removal, Bloch repeatedly answered "I don't know." (ECF 14, Ex. P.) At no point during this interview or the first interview did Bloch ever tell Filipowicz that Furman, his supervisor, was present during the scrap metal removal or that he or any

8

other supervisor had any knowledge of or had authorized the removal of the scrap metal. (ECF 14, Exs. O and P.) Filipowicz discussed Plaintiff's conflicting statements and how his statements conflicted with other evidence that he had found with Plaintiff and his union representative. (ECF 14, Ex. P.) Bloch took a break to talk privately with his union representative, and upon his return, admitted to being untruthful about whether or not he knew that Mack had received a check from C. Lick. (Id.) Filipowicz then terminated Bloch for cause, for the unauthorized removal of Mack property and for dishonesty and providing false and misleading information to Mack during the course of its investigation. (ECF 14, Exs. P and Z; Filipowicz Dep. at 19-20.) At no point during his employment or the investigation did Bloch ever claim that he had been discriminated against because of his age. (Bloch Dep. at 202-203.)

After he was terminated, Bloch's union filed a grievance on his behalf alleging unfair termination; this grievance made no mention of age discrimination. (ECF 14, Ex. AA.) The grievance was withdrawn after Defendant and the union entered into a settlement agreement whereby Plaintiff was reinstated, then voluntarily retired and was permitted to collect his full pension benefits. (Bloch Dep. at 128-130; ECF 14, Ex. BB.)

Bloch then filed a charge of discrimination with the EEOC, claiming that Defendant targeted him because of his age and set him up to be fired so a younger person could replace him. (ECF 14, Ex. DD.) Plaintiff admits that he cannot identify any Mack employee who was accused of removing company property without authorization who was treated better than he. (Bloch Dep. at 185.) Following Bloch's termination, Defendant claims that his position was filled by two employees: Joel Biers, who is forty-six, and David McCullion, who is the same age as Bloch. (Bloch Dep. at 206-208; ECF

9

14, Ex. G.) Bloch testified that Joel Biers filed his position, not David McCullion, and that he knows this because he is renting an apartment to Biers' ex-wife. (Bloch Dep. at 206-208.)

## IV. DISCUSSION

Plaintiff's Complaint contains 2 counts: Count I for ADEA violations and Count II for violations of the Pennsylvania Human Resources Act. Both claims are analyzed pursuant to the same framework. Andersen v. Mack Trucks, Inc., 118 F. Supp.3d 723, n. 27 (E.D. Pa. 2015).

Under the ADEA, an employer is prohibited from discharging any individual or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of an individual's age. 29 U.S.C. § 623(a)(1). When analyzing claims under the ADEA where, as here, there is an absence of direct evidence of discrimination, the Court applies the burden-shifting framework set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Ordinarily, to make out a *prima facie* case under McDonnell-Douglas in an ADEA case, "the plaintiff must show (1) that he was at least forty years of age or older, (2) that the defendant took an adverse employment action against the plaintiff, (3) that he was qualified for the position in question, and (4) that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).

Establishment of a *prima facie* case creates a presumption of discriminatory intent that a defendant has the burden to rebut by setting forth some legitimate non-discriminatory reason for its actions. McDonnell-Douglas, 41 U.S. at 802. If the

employer does so, the presumption of discrimination drops out and the plaintiff must then "demonstrate that the employer's proffered rationale was a pretext for age discrimination." Smith v. City of Allentown, 589 F.32d at 689.

In order to demonstrate pretext, plaintiff "must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Iadimarco v. Runyon, 190 F.3d 151, 165-66 (3d Cir. 1999)(emphasis in original)(*quoting* Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Plaintiff cannot "simply show that [defendant's] decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated [defendant], not whether [defendant] is wise, shrewd, prudent or competent." Fuentes, 32 F.3d at 765. Instead, plaintiff must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that [defendant] did not act for the asserted non-discriminatory reasons." Id. (emphasis in original) Ultimately, plaintiff must prove that age was the "but for" cause of his termination. Gross v. FBL Financial Services, Inc., 557 U.S. 167, 180 (2009).

### A. PRIMA FACIE CASE

First, Defendant argues that Plaintiff cannot make out a *prima facie* case of discrimination. As discussed above, to establish a *prima facie* case of age discrimination, Bloch must prove that: 1) he is over forty years of age; 2) he suffered an adverse employment action; 3) he was qualified for the position in question; and 4) he "was

ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). Defendant admits to the first two prongs of the above test, but argues that Bloch was not qualified for the position at the time of his termination and that he was not replaced by another sufficiently younger employee so as to support an inference of discriminatory animus.

An employee who is terminated for cause has not met the third element of the test for a *prima facie* case by showing that he was qualified for the position from which he was terminated. *See* Sarullo v. United States Postal Service, 352 F.3d 789, 797 (defendant was entitled to summary judgment where *prima facie* case is not met when employee is terminated for cause due to employee's arrest for selling drugs at work); Fullman v. Potter, 480 F. Supp. 2d 782, 790 (E.D. Pa. Mar. 28, 2007), aff'd, 254 F. App'x 919 (3d Cir. 2007) (plaintiff in a Title VII case who failed to disclose, as required by the employment application, that he was previously employed by the Postal Service and therefore terminated for dishonest conduct was terminated for cause and could not show that he was qualified for the position from which he was terminated); Robinson v. PFPC, Inc., 2010 WL 744191, at *4 (E.D. Pa. Mar. 4, 2010) (plaintiff in a Title VII case who was terminated for admitted falsification of documents was terminated for cause and has not shown that he was qualified for the position from which he was terminated.)

Defendant argues that Bloch was terminated for cause following an investigation where it was determined that Plaintiff 1) arrived for work on November 10, 2013, four hours earlier than his scheduled overtime shift without authorization and in violation of the Collective Bargaining Agreement; 2) coordinated the removal of scrap metal without

prior authorization in violation of Company procedures; 3) had advised the security guard on duty not to log the entry of the scrap metal removal trucks; and 4) provided inconsistent and misleading explanations about what occurred during two different interviews with Filipowicz. (ECF 14 at 19-20.) Defendant states that these things all violated Mack's Rules of Conduct, were subject to automatic termination, and Bloch was therefore not qualified for his job. (Id. at 20.)

In his opposition to Defendant's motion for summary judgment, Plaintiff completely fails to address Defendant's argument that he cannot make out a *prima facie* case of age discrimination. Plaintiff makes no attempt to refute the above-cited case law that holds that an employee terminated for cause is not qualified for the position for the purposes of establishing a *prima facie* ADEA discrimination claim. Although there is some factual dispute as to whether or not Bloch asked Mr. Butt, the security guard, not to log the scrap removal trucks, there is no dispute that Bloch arrived earlier than his scheduled shift without authorization and that Bloch provided inconsistent and misleading explanations to Filipowicz during his investigation of the matter, which warranted termination. Plaintiff does insist upon pointing out flaws in Defendant's investigation, which completely misses the point. The investigation need not be perfect to establish cause for termination. Accordingly, I find that Bloch fails to meet the second prong of the test to establish a *prima facie* case of age discrimination, as he makes no attempt to prove, and in fact cannot prove, that he was qualified for the position from which he was terminated.

Next, Defendant argues that Plaintiff is unable to prove that he was replaced by another employee who is sufficiently younger than him to support an inference of age

discrimination. Defendant asserts that Bloch's position was filled by two employees, one of whom, Dave McCullion, is the same age as Bloch and one of whom, Joel Biers, is 46 years old. Defendant argues that it is "axiomatic that the Company would not fill a position with someone the same age as Mr. Bloch if they had terminated him in an effort to replace him with a younger employee." (ECF 14 at 20.) However, Plaintiff testified that his position was filled by Joel Biers and not Dave McCullion, claiming to know who is filling his position at Mack because he rents an apartment to Biers' ex-wife. (Bloch Dep. at 206-208.) Plaintiff's testimony is sufficient to create a genuine issue of material fact on this issue for the purposes of the instant summary judgment motion. Construing the facts in favor of Plaintiff, the non-moving party, I must find that the fourth prong of the *prima facie* test is at least in question, as a genuine issue of fact exists as to whether he was replaced by another employee sufficiently younger than him to support an inference of discrimination. However, because Plaintiff cannot prove that he was qualified for the position at the time of his termination, he cannot establish *a prima facie* case of age discrimination, and I must grant summary judgment to the defendant.

### B. LEGITIMATE NON-DISCRIMINATORY REASON FOR TERMINATION

Even assuming *arguendo* that Bloch could establish a *prima facie* case of age discrimination, I find Mack has a legitimate, non-discriminatory reason for his termination.

Once Plaintiff establishes a *prima facie* case of age discrimination, the burden then shifts to Defendant to "identify a legitimate non-discriminatory reason for the adverse employment action." Smith, 589 F.3d at 689. "This burden is relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion

that it took the adverse employment action for a non-discriminatory reason." Burton, 707 F.3d at 426. Defendant has clearly identified a non-discriminatory reason for Bloch's termination, as it asserts and Filipowicz testified that Bloch was terminated for his unauthorized removal of scrap metal and his dishonesty during the subsequent investigation in violation of company policies. (Filipowicz Dep. 19-20.) *See* Majtan v. Weck, 2000 WL 1386321, *3 (E.D. Pa. Sept. 22, 2000) (finding that a plaintiff's termination for unauthorized removal of company property in violation of company policy satisfies employer's burden of demonstrating a legitimate non-discriminatory reason for its actions).

### C. PRETEXT

Once Defendant establishes a legitimate non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to prove that Defendant's proffered reason for his termination was "merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Sarullo, 352 F.3d at 797. In order to establish a genuine issue of fact as to pretext in order to defeat summary judgment, Plaintiff must show that Defendant's proffered reason for termination is "weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find [it] unworthy of credence." Id. at 800. Accordingly, Bloch must "present evidence contradicting the core facts put forward by defendant as the legitimate reason for its decision." Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005). This type of showing will "require the production of documents or deposition testimony at odds with defendant's proffered explanation." Furru v. Vanguard Group, Inc., 2015 WL 5179407 (E.D. Pa . Sept. 4, 2015).

In an effort to prove pretext, Bloch makes several arguments regarding the occurrences of November 10, 2013, and Defendant's investigation of his activity. He argues that 1) Furman, the supervisor on duty, was present and knew of his actions on November 10, 2013 and did nothing to stop him; 2) Filipowicz's investigation was incomplete and/or reached the wrong conclusion; and 3) Mack was ultimately paid for the scrap metal and never reported the incident to the police. (ECF 15 at 8-9, 12-16.) All of these arguments fail to prove pretext in Mack's termination of Plaintiff.

To prove pretext, Bloch must prove that Mack's "articulated reason was not merely wrong, but that it was so plainly wrong that it could not have been the employer's real reason." Fullman v. Potter, 480 F.Supp.2d at 792-93 (internal quotations omitted). Specifically, Plaintiff must:

> point to some evidence, direct or circumstantial, from which a factfinder could reasonably either 1) disbelieve the employer's articulated legitimate reasons; or 2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Burton, 707 F.3d at 427 (*quoting* Fuentes v. Perskie, 32 F.3d 759, 764-65 (3d Cir. 1994). Accordingly, Plaintiff must prove that Mack believed its own investigation into Bloch's actions was incorrect and that its real motives were discriminatory. It is not enough for Plaintiff to argue that Bloch did not violate company policy, or that Mack's investigation into Bloch's conduct was flawed. It has been stated that "the Court do[es] not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practice, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere." Murphy v. Ctr for Emergency Med. of W. Pa, 944 F.Supp.2d 406, 435 (W.D. Pa. 2013) (quoting Brewer

v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332 (3d Cir. 1995). Thus, even if Mack's investigation was improper or Bloch did not violate company policy, Plaintiff cannot prove pretext unless he can prove Mack's conclusion that Bloch engaged in unauthorized removal of property and then lied about it during the investigation was not Mack's real reason for his termination. Quite simply, there is no evidence whatsoever to support this contention.

It is undisputed that Filipowicz performed an investigation, spoke to multiple witnesses,, took statements, interviewed Bloch on two occasions and took verbatim notes. Thus, Mack has presented undisputed testimony as to what it believed to have occurred on November 10, 2013 upon completion of Filipowicz's investigation. There is a complete lack of evidence from which a reasonable factfinder could either disbelieve Mack's stated legitimate reasons for the termination or believe that a discriminatory reason was more likely than not a motivating cause of the employer's action. Plaintiff takes issue with Mack's failure to interview Furman during its investigation; however, it is undisputed that Filipowicz was unaware that Furman was present on November 10, 2013, until well after his investigation was completed. Moreover, Filipowicz's failure to interview Furman is irrelevant, as the quality and depth of Mack's investigation cannot amount to pretext, as courts in this circuit have found challenges to the adequacy of an investigation insufficient to establish pretext. *See* Glenn v. Raymour and Flanigan, 832 F.Supp.2d 539, 553 (E.D. Pa. Dec. 22, 2011) (finding that employer's alleged failure to conduct meaningful investigations, interview witnesses and obtain witness statement regarding several incidents involving plaintiff and co-workers was insufficient to establish pretext); Money v. Provident Mutual Life Ins. Co., 189 Fed.Appx. 114, 116–17

17

(3d Cir.2006) (finding plaintiff's "naked credibility attack" on the adequacy of an investigation insufficient to establish pretext); Geddis v. Univ. of Delaware, 40 Fed.Appx. 650, 653 (3d Cir.2002) (finding that inadequate investigation is not sufficient to show an employer acted with discriminatory animus); Thomas v. Fairmount Behavioral Health System, 2007 WL 2306592, at *6 (E.D.Pa. Aug. 9, 2007)(finding insufficient evidence to establish pretext after considering plaintiff's argument that a "diligent investigation" did not occur); Reynolds v. Metro. Life Ins. Co., 2007 WL 603012, at *6 (W.D.Pa. Feb. 22, 2007) (finding that "[e]ven if [defendant] conducted a flawed investigation ... there is no indication that it was pretext for age discrimination")) Clearly, in this matter, even if Mack conducted a flawed or incomplete investigation, there is no indication whatsoever that it was pretext for age discrimination.

  Plaintiff also attempts to establish pretext by presenting examples of younger employees who were not terminated for wrongdoing. However, Bloch admitted that he knew nothing of the actual facts associated with the lack of discipline of the individuals that he identified, and that he knows of no other employees who were accused of removing company property without authorization. (Bloch Dep. at 185.) Therefore, even assuming Plaintiff had established a *prima facie* case of age discrimination, he has failed to point to any evidence from which Mack's proffered legitimate reason for terminating him could be disbelieved. Plaintiff is unable to meet his high burden of showing that Mack did not honestly believe its own investigation results. Accordingly, there is no genuine issue of material fact in this matter and Mack is entitled to summary judgment.

## IV.     CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted and this case is dismissed. An appropriate order follows.